IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PRIME MEDIA GROUP LLC,<br><br>            Plaintiff(s),<br>    v.<br><br>ACER AMERICA CORPORATION,<br><br>            Defendant(s).<br>_____/ | CASE NO. 5:12-cv-05020 EJD<br><br>**ORDER DENYING COUNTER-DEFNEDANTS' MOTIONS TO DISMISS**<br><br>[Docket Item No(s). 20, 28, 29] |

In this action based primarily in breach of contract, presently before the court are three motions to dismiss filed by Counterdefendants Prime Media Group LLC ("Prime Media"), Circle Line Marketing and Communication S.R.L. ("Circle Line"), Breakout S.R.L. ("Breakout"), and Keechwood Limited ("Keechwood").[1]  See Docket Item Nos. 20, 28, 29.  Each motion seeks dismissal of Counterclaimant Acer America Corporation's ("Acer") counterclaim for fraudulent deceit as deficient under the heightened pleading standard promulgated by Federal Rule of Civil Procedure 9(b).  For their part, Prime Media and Keechwood also seek dismissal of Acer's affirmative defense for fraud on the same ground.  Acer has filed written opposition to the motions. See Docket Item Nos. 24, 30, 31.

Federal jurisdiction arises under 28 U.S.C. § 1332.  Having carefully reviewed these matters, the court found them suitable for disposition without oral argument pursuant to Civil Local Rule 7-

---

[1] In this Order, Prime Media, Circle Line, Breakout and Keechwood are referred to collectively as "Counterdefendants" where appropriate.

1
CASE NO. 5:12-cv-05020 EJD
ORDER DENYING COUNTERDEFNEDANTS' MOTIONS TO DISMISS

1(b). Accordingly, the previously-scheduled motion hearings were vacated. The motions to dismiss will now be denied for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Prime Media is "in the business of providing print, radio, television and internet advertising and medial buying services." See Compl., Docket Item No. 1, at ¶ 8. Since at least 2006, Prime Media and Acer, a computer manufacturer, have engaged in a business relationship whereby Prime Media would execute media buying plans for Acer, which included the purchase of media space for Acer. Id. at ¶¶ 10, 11. Acer would receive invoices for Prime Media's services from Keechwood, Prime Media's billing agent. Id. at ¶ 11.

On September 26, 2012, Prime Media filed a Complaint against Acer asserting causes of action for breach of contract, implied-in-fact contract, account stated, unjust enrichment and services rendered. Id. at ¶ 9. In particular, Prime Media alleges that Acer failed to pay invoices for at least two media campaigns: the Gateway campaign from 2009 and the Iconia Tablet campaign from 2011. Id. at ¶¶ 13-34. According to Prime Media, Acer's outstanding balance for these campaigns exceeds $7,000,000. Id. at ¶ 2.

On October 18, 2012, Acer filed an Answer to the Complaint with counterclaims for fraudulent deceit, breach of contract and accounting against Prime Media, Keechwood, Circle Line and Breakout. See Answer, Docket Item No. 12. In essence, Acer alleges that its former CEO, Gianfranco Lanci ("Lanci"), orchestrated a scheme whereby contracts for media services were transferred from another company to Circle Line, a company controlled and owned, at least in part, by Lanci, his wife and her sister. Id. at ¶¶ 11, 12, 26. Lanci then caused Circle Line, Prime Media, Keechwood and Breakout to each generate false and inflated invoices to Acer for publishing and media expenses and to charge Acer a fixed fee for these overcharges based on an ineffective advertising contract. Id. at ¶¶ 26, 29, 31. Acer contends that these entitles knew the invoices were inaccurate. Id. at ¶ 30.

Counterdefendants each filed limited Answers to Acer's counterclaims. See Docket Item Nos. 19, 26, 27. They also filed the instant motions.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff, or here a counter-claimant, to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.[2]

Claims which sound in fraud are subject to a heightened pleading standard. Fed. R. Civ. Proc. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where 'the object of the conspiracy is fraudulent.'"). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz, 476 F.3d at 764. In other words, these claims must generally contain more specific facts than is necessary to support other causes of action.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must generally accept as true all "well-pleaded factual

---

[2] Although the Ninth Circuit has not yet settled this issue once and for all, it seems a foregone conclusion at this point that the Rule 8 pleading standard, and by extension the heightened standard required by Rule 9(b), should also apply to affirmative defenses. See Barnes v. AT&T Pension Benefit Plan-Nonbargained Program, 718 F. Supp. 2d 1167, 1171 (N.D. Cal. 2010)

1 allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). "[Material which is properly submitted as part of the complaint may be considered." Twombly, 550 U.S. at 555. But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Id.

### III.   DISCUSSION

Counterdefendants argue that Acer has improperly lumped them together as a group when pleading the allegations of a fraudulent scheme within the counterclaim for fraudulent. Based on this assertion, they contend that Acer's counterclaim and affirmative defense fail under Rule 9(b) because none of the four involved entities can determine their alleged role in the fraud. Acer, as expected, disagrees.

To resolve this motion, the court begins with what must be plead to show fraud. In California, the elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or to induce reliance (4) justifiable reliance; and (5) resulting damage. Engalla v. Permanente Med. Group, Inc., 15 Cal. 4th 951, 974 (1997). It is to these elements that Acer must conform its counterclaim. In doing so, it is undisputed that Acer also had to comply with Rule 9(b).

As already noted, Rule 9(b)'s detail requirement seeks to ensure that adequate notice is provided to the parties accused of fraudulent conduct in order to allow for a meaningful defense. "Without such specificity, defendants in these cases would be put to an unfair disadvantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995). Specific allegations that result in a targeted response benefit all parties involved; everyone gets to move forward on an equal footing with little left to speculate.

In some respects, Rule 9(b)'s heightened pleading requirement also acts to bar the assertion of weak or unfounded - and potentially costly - claims of fraudulent conduct. See Bly-Magee v. California, 236 F.3d 1014, 1018 (9th Cir. 2001). Because they must provide more than just a

4
CASE NO. 5:12-cv-05020 EJD
ORDER DENYING COUNTERDEFNEDANTS' MOTIONS TO DISMISS

superficial "short and plain statement," plaintiffs are forced to consider whether the facts known at the time of filing can withstand a Rule 9 challenge. Indeed, "[b]y requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." Ackerman v. Nw. Mut. Life Ins. Co., 172 F.3d 467, 469 (7th Cir. 1969).

It therefore comes as no surprise that, within the realm of Rule 9(b), "everyone did everything" allegations are not countenanced. See Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011). Although "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify *false statements* made by each and every defendant," plaintiff must nonetheless offer enough to differentiate each defendant's participation in the fraud. Swartz, 476 F.3d at 764 (emphasis preserved). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" Id. (quoting Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989)).

Acer has done just that here. In the Answer, Acer describes a fraudulent scheme involving non-party Lanci and Counterdefendants, the latter of whom each allegedly "generate[d] false and inflated invoices to Acer for publishing and media expenses" beginning in 2003. See Answer, at ¶ 29. According to Acer, these invoices were known to Counterdefendants to be inaccurate and "indeed far greater than the amount to which they were entitled." Id. at ¶ 30. And since the excess costs were not itemized but "embedded into the total amounts invoiced," Acer was completely unaware of the scheme until Lanci resigned on March 31, 2011. Id. at ¶¶ 32, 35. Acer has incurred monetary damage as a result. Id. at ¶¶ 43, 53(d).

The court finds that the allegations identified above sufficiently "identify the role" of each participant due to the nature of the specific scheme described. Indeed, it appears that each counterdefendant had the same role, which was to overcharge Acer by inflating its individual billing. Furthermore, the allegations indicate that each counterdefendant was engaging in this conduct simultaneously such that they were acting in parallel to each other. That being the case, this

counterclaim is not actually one which improperly lumps Counterdefendants without distinction or alleges that "everyone did everything." Here, the only reason one could ever say that "everyone did everything" is because they are each alleged to have the same role in the scheme. Such a designation does not require dismissal here, however, because the allegations notify Counterdefendants of their individual role.

Aside from being actions of securities fraud, the cases cited by Counterdefendants are distinguishable because the fraudulent schemes at issue encompassed several distinct roles. In Hokama v. E.F. Hutton & Co., Inc., the district court's determination that plaintiffs had inadequately described each defendant's role in the fraud was understandable, considering the complaint in that action charged all defendants with *six separate misrepresentations* but failed to designate which defendant was responsible for which misrepresentation. 566 F. Supp. 636, 645-46 (C.D. Cal. 1983). Similarly, Lubin v. Sybedon Corp. involved no less than *twenty-five defendants,* all of whom were alleged to have made every false statement. 688 F. Supp. 1425, 1443-44 (S.D. Cal. 1988). The district court could easily classify the Lubin complaint "as a classic instance of pleading a 'monolithic enterprise.'" Id. at 1444. The same cannot be said of Acer's counterclaim, which asserts only one scheme against four entities.

In sum, Acer has plead both a counterclaim and affirmative defense based in fraud. Counterdefendants' misrepresentation took the form of inflated invoices, issued from 2003 through 2009, which sought to take advantage of a fixed fee provision in a preceding advertising contract. Counterdefendants, it is alleged, knew the invoices were inaccurate but intended Acer to pay them anyway.[3] Acer's reliance was justified considering its CEO at the time is alleged to have been partially orchestrating the scheme, and because it was overcharged, Acer incurred monetary damage. Since the allegations, as a whole, are sufficient under Rules 8 and 9(b), Counterdefendants' motions to dismiss will be denied.

//

//

---

[3] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## IV. ORDER

The Motions to Dismiss (Docket Item Nos. 20, 28, 29) are DENIED.

**IT IS SO ORDERED.**

Dated:  February 19, 2013



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:12-cv-05020 EJD
ORDER DENYING COUNTERDEFNEDANTS' MOTIONS TO DISMISS