United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

PRIME MEDIA GROUP, LLC,
　　　　Plaintiff,

v.

ACER AMERICA CORPORATION,
　　　　Defendant.

Case No. 12-cv-05020-BLF

**ORDER RE PARTIES' MOTIONS *IN LIMINE***

[Re:  ECF 139-150]

　　　This order addresses motions *in limine* submitted by both sides to this litigation. For the reasons explained below, the motions are decided as follows:

　　　Counter-Defendants' Motion *in Limine* #1: **WITHDRAWN**.

　　　Counter-Defendants' Motion *in Limine* #2: **GRANTED**.

　　　Counter-Defendants' Motion *in Limine* #3: **DENIED**.

　　　Counter-Defendants' Motion *in Limine* #4: **DENIED**.

　　　Counter-Defendants' Motion *in Limine* #5: **DENIED**.

　　　Counter-Defendants' Motion *in Limine* #6: **GRANTED**.

　　　Counter-Defendants' Motion *in Limine* #7: **GRANTED**.

　　　Acer America's Motion *in Limine* #2: **DENIED**.

　　　Acer America's Motion *in Limine* #3: **GRANTED IN PART AND DENIED IN PART**.

　　　Acer America's Motion *in Limine* #4: **DENIED WITHOUT PREJUDICE**.

　　　Acer America's Motion *in Limine* #5: **DENIED WITHOUT PREJUDICE**.

## I.　LEGAL STANDARD

### A.　RELEVANCE

　　　Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. FRE 401. Unless rendered inadmissible by application of another rule, relevant evidence is

generally admissible. FRE 402. Irrelevant evidence is never admissible. *Id.* Despite the general admissibility of relevant evidence, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. FRE 403.

## B.   FOUNDATION

### 1.   PERSONAL KNOWLEDGE

Except for expert opinions admissible under Federal Rules of Evidence 702 and 703, a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. FRE 602.

### 2.   AUTHENTICATION

With the exception of self-authenticating evidence enumerated in Federal Rule of Evidence 902, before an item may be admitted into evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. FRE 901.

## C.   EXPERT OPINION

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals* and its progeny. A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b)   the testimony is based on sufficient facts or data;

    c)   the testimony is the product of reliable principles and methods; and

    d)   the expert has reliably applied the principles and methods to the facts of the case.

FRE 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

*Daubert* and Federal Rule of Evidence 702 broadly require not only that an expert be qualified, but also that the expert's testimony be reliable and relevant. *Daubert* at 589. In performing its

United States District Court
Northern District of California

"gatekeeping" function, the trial court examines "the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. Certain factors can be helpful in making reliability determinations, such as "testing, peer review, error rates, and 'acceptability' in the relevant scientific community." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). But these "factors [are] meant to be helpful, not definitive." *Id.* at 151. The "test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 141-42.

## II.   DISCUSSION

### A.   PRIME MEDIA, CIRCLE LINE, BREAKOUT, AND KEECHWOOD'S (COLLECTIVELY "PRIME MEDIA") MOTIONS *IN LIMINE*

#### 1.   MOTION TO BAR REFERENCE TO THE ITALIAN CRIMINAL INVESTIGATION

**WITHDRAWN**.

Having been withdrawn, Prime Media's first motion *in limine* is no longer under consideration.

#### 2.   MOTION TO BAR REFERENCE TO MARTELLI'S OR CIRCLE LINE'S ASSERTION OF RIGHT NOT TO TESTIFY

**GRANTED**.

Prime Media moves under Federal Rule of Evidence 403 to bar reference to Martelli's and Circle Line's prior assertions of the right not to testify on the ground that the privilege was later revoked and both entities provided deposition testimony. ECF 140. Being unopposed, the motion is granted.

#### 3.   MOTION TO ALLOW ITALIAN WITNESSES TO PROCEED OUT OF ORDER AND TESTIFY ONE TIME

**DENIED**.

Prime Media requests that Federica Pasquato and Marilena Martelli be allowed to testify out of order and only once, during the presentation of Prime Media's case-in-chief. Prime Media wishes to elicit testimony from these witnesses as anticipated rebuttal to Acer's case-in-chief. Prime Media submits that the witnesses would be inconvenienced if they were required to remain

in the United States throughout the second week of trial and thus be away from their families and jobs for an extended period of time. Acer contends that it does not intend to call either witness in its case-in-chief because it plans to submit their deposition testimony to the jury. Acer submits that it would be prejudiced if Prime Media were permitted to call these witnesses out of order during Prime Media's case-in-chief to offer rebuttal testimony against Acer America's case-in-chief before it is even presented.

At the pretrial hearing, the parties worked out a reasonable accommodation that will satisfy the needs of both sides. Acer America agrees that, so long as Ms. Pasquato and Ms. Martelli appear in person as part of Prime Media's case-in-chief, it will not object to their further appearance by videoconference in the second week of trial to rebut Acer America's case-in-chief. Prime Media has also agreed to this procedure.

Although it appears that the parties have reached an agreement, for the sake of clarity, the court will deny the motion to call the witnesses out of order and order that neither witness be compelled by subpoena or request for court order to remain in the United States after their initial live testimony. Each witness may appear by videoconference to provide additional testimony during the second week of trial. The parties will be responsible for arranging the logistics of any such videoconference testimony.

**4.   MOTION TO EXCLUDE GORDON L. KLEIN'S EXPERT OPINIONS RELATING TO ACER AMERICA'S ALLEGED DAMAGES FROM INFLATED INVOICES**

**DENIED**.

Prime Media moves to exclude the expert opinions of Gordon Klein relating to Acer America's alleged damages. Specifically, Prime Media argues that Klein's opinions fail to account for reimbursements that Acer America received from various component manufacturers. According to Prime Media, these reimbursements offset the damages suffered by Acer America, and therefore failure to consider these reimbursements as part of his damages calculation renders Klein's opinions unreliable. Acer America responds that Klein did in fact consider these reimbursements and determined that these reimbursements do not offset Acer America's damages because Acer

1   America could have used the same funds to purchase more advertisements or for other business

2   activities had it not been overcharged by Prime Media.

3        Prime Media's motion conflates and merges two separate and distinct issues. The first is

4   whether Prime Media overcharged Acer America. The second is whether and to what extent Acer

5   America was damaged by these overcharges. Klein's expert report reflects this distinction, with

6   § VI(C) concluding that "Prime Media Overcharged Acer America by $10.7 Million," Klein

7   Report at § VI(C), ECF 142-4, and § VI(E) concluding that "Acer America Was Harmed

8   Regardless of Any Reimbursement by Batch Funds," Klein Report at § VI(E). The admissibility of

9   the opinions in these two sections must be assessed separately. Prime Media's argument appears to

10  be predicated on a fundamental disagreement with the conclusion of § VI(E), which it wishes to

11  import as a methodology flaw into § VI(C).

12       Addressing first the admissibility of Klein's conclusion in § VI(C)— that "Prime Media

13  Overcharged Acer America by $10.7 Million"—the court notes that Klein's conclusion relates only

14  to the amount Acer America was overcharged by Prime Media, not to the relationship between his

15  calculated overcharges and Acer America's damages. It is only in § VI(E) where Klein purports to

16  address the relationship between these overcharges and Acer America's alleged damages.

17  Reimbursements by component manufacturers do not relate to whether and to what extent Prime

18  Media overcharged Acer America. Such reimbursements are completely irrelevant to the

19  conclusion expressed by Klein in § VI(C). Accordingly, the court does not find Klein's failure to

20  address these reimbursements to be a methodology flaw in calculating the amount Prime Media

21  overcharged Acer America.

22       Addressing second the admissibility of Klein's conclusion in § VI(E)—that "Acer America

23  Was Harmed Regardless of Any Reimbursement by Batch Funds"— Klein's opinion in this section

24  is essentially that reimbursements from component manufacturers do not mitigate the harm from

25  Prime Media's overcharges, since those same reimbursements could have been put toward

26  additional advertisements or other business activities had Acer America not been overcharged.

27  Prime Media argues that this opinion is inadmissible on two grounds. First, Prime Media argues

28  that the opinion is "pure speculation" because "there is zero evidence that Acer would have placed

United States District Court
Northern District of California

5

*any* additional advertisements if that batch funds were not exhausted." MIL 4 at 2, ECF 142. The court disagrees. *See* Klein Report at 10, fn. 22 (citing evidence that it was the practice of the parties to exhaust the batch funds).

Second, Prime Media argues that Klein failed to quantify various factors, such as how many additional advertisements would have been placed, what the additional ads would cost, or how much Acer America would have benefitted from additional ads. This argument does not speak to Klein's methodology so much as to the parties' competing theories of the case. Acer America appears to advocate the theory that, for each dollar it was overcharged, it was harmed because that dollar was no longer available to be put toward something else. Prime Media, on the other hand, appears to be arguing that batch-fund dollars have a diminishing marginal value, because additional ads might not have benefited the company as much as the original ads and therefore some of each additional dollar spent would have been wasted. Put differently, Prime Media's theory is that each dollar Acer America overpaid to Prime Media was actually worth less than a full dollar to Acer America.

Klein's failure to take such factors into account is only a methodological failure to the extent the jury chooses to accept Prime Media's damages theory. Prime Media is of course free to argue this theory to the jury. But to exclude Klein's opinions for failing to take the above-identified factors into account would necessarily be to choose Prime Media's damages theory over Acer America's damages theory, thus abrogating the jury's role as the finder of fact. Because Klein's analysis is methodologically sound with respect to the damages theory forwarded by Acer America, his opinions may properly be presented to the jury. Decisions regarding the factual plausibility of each side's underlying damages theory are for the jury, not the court.

### 5.   MOTION TO EXCLUDE GORDON L. KLEIN'S EXPERT OPINIONS RELATING TO KLEIN'S ANALYSIS OF UNMATCHED INVOICES DENIED.

Prime Media moves to exclude the expert opinions of Gordon L. Klein relating to Klein's analysis of unmatched invoices. To calculate Acer America's damages, Klein reviewed the invoices issued by Prime Media and classified them into two categories: matched and unmatched. Klein

United States District Court
Northern District of California

1    Report at § VI(B), ECF 143-1. "Matched" invoices were those for which Klein could determine the

2    underlying media vendor invoices. For matched invoices, Klein calculated the amount that should

3    have been invoiced based on the underlying vendor invoices, then compared this to the amount

4    actually invoiced by Prime Media. Klein ultimately concluded that the amount billed to Acer

5    America in the matched invoices was 32% larger than it should have been. Klein Report at

6    § VI(B)(1).

7         About 30% of the invoices were "unmatched," meaning Klein was unable to match the Prime

8    Media invoices to underlying vendor invoices. Klein Report at § VI(B)(2). Because overcharges

9    could not be directly calculated for unmatched invoices, Klein extrapolated from overcharges on

10   the matched invoices to estimate the overcharges on the unmatched invoices. That is, "[w]ith

11   respect to these 'unmatched' invoices, [Klein] assumed that the degree to which Prime Media

12   overcharged Acer America is identical to the degree to which [he] observed overcharges in the

13   'matched' invoices from Prime Media to Acer America." Klein Report at § VI(B)(2), ¶ 26. Prime

14   Media characterizes this as a "statistically invalid assumption" and moves to exclude the evidence.

15   MIL 5 at 3, ECF 143.

16        Extrapolating results from a sample to a population is a routine statistical technique and

17   indeed is often necessary in the face of an incomplete or intractably large data set. Prime Media's

18   damages expert acknowledges as much in her deposition. *See* Gonzalez Deposition at 188:18-25,

19   ECF 162-1. Prime Media further argues that, even though such extrapolations may be valid in the

20   abstract, Klein's extrapolations are unreliable because wide variations exist between the amounts of

21   overcharges on various invoices and Klein's analysis does not quantify the level of confidence with

22   which conclusions may be drawn regarding the unmatched invoices from the matched invoices.

23   This, however, does not render Klein's opinions inadmissibly unreliable. Rather, it goes to the

24   weight the jury should accord Klein's opinions. Indeed, Klein's ability or inability to quantify the

25   level of confidence regarding his extrapolation from an observed sample to an unobserved

26   population is a classic topic for cross-examination. But that is an argument regarding whether an

27   expert's opinion should be ultimately accepted, not whether it should be admitted in the first

28   instance.

**6.    MOTION TO EXCLUDE REFERENCE TO ALLEGED PERFORMANCE ISSUES GRANTED.**

Prime Media predicts that Acer America may attempt to introduce evidence at trial that the advertisements created by Counter-Defendants for Acer America were substandard or not appropriate. They move to preclude such evidence on the ground that any such evidence would be irrelevant. Acer America opposes the motion on two grounds.

First, Acer America argues that the evidence is relevant to assessing Acer America's damages, because Acer America suffered harm as a result of the substandard and inappropriate advertisements. This argument fails because any such damages fall outside Acer America's pleadings. Acer America's counterclaims do not allege any damage suffered as a result of inappropriate advertisements or even that any advertisements were inappropriate or substandard. Paragraph 26 of Acer America's counterclaims recites that "Circle Line began providing advertising services to Acer." This appears to be the only mention of the advertising services rendered by Prime Media. Every other factual allegation made by Acer America regarding its counterclaims relates to the invoices issued by Prime Media rather than to the quality of the services rendered. Because Acer America has not alleged any harm resulting from substandard advertisements in its pleadings, evidence of substandard advertisements is not relevant to damages under Acer America's breach of contract counterclaim.

Second, Acer America argues that evidence regarding the quality of Prime Media's advertisements is relevant to its counterclaim for fraud because it shows that Prime Media was concerned only with inflating its invoices, rather than on providing quality advertising under its contract with Acer America. Thus, Acer America argues, the quality of Prime Media's advertisements is probative of Prime Media's intent. Opposition Brief at 1, ECF 164. The court notes that such an inference is, at best, extremely attenuated, relying not only a finding that the advertisements *were* of substandard quality, but also on a finding that Prime Media *knew* they were of substandard quality. Given the very low probative value of this evidence with respect to Acer America's fraud counterclaim, the court is persuaded that the probative value of the evidence is substantially outweighed by the undue consumption of time required to prove or disprove the

propriety and quality of Prime Media's advertisements, the risk of creating unfair prejudice to Prime Media, and the risk of confusing the jury regarding the issues raised by the competing breach of contract claims. FRE 403. Prime Media's motion is accordingly granted.

### 7.   MOTION TO EXCLUDE WITNESSES DURING TRIAL GRANTED.

Prime Media moves to exclude all witnesses other than designated corporate representatives and experts from the courtroom during trial. ECF 145. Being unopposed, the motion is granted.

## B.   ACER AMERICA'S MOTIONS IN LIMINE

### 1.   MOTION FOR ADVERSE INFERENCE

The court has requested additional oral argument from the parties regarding Acer America's Motion *in Limine* #1 and will issue a separate order addressing this motion after hearing from the parties.

### 2.   MOTION TO EXCLUDE EVIDENCE OF INTRA-COMPANY TRANSFERS DENIED.

Acer America moves to exclude evidence that Acer America was reimbursed by Acer Europe for the funds it paid to Prime Media on the ground that these reimbursements are irrelevant. FRE 401, 402.

Prime Media argues that this evidence is relevant for two reasons. First, it argues that transfers from Acer Europe to Acer America are relevant in establishing its defense that all overcharges by Prime Media were later returned in the form of credits. Without evidence of these transfers from Acer Europe, Prime Media argues, it is impossible to explain to the jury why credits were issued to Acer Europe instead of Acer America. Second, Prime Media argues that Acer Europe's funds transfers to Acer America for payments made to Prime Media show that Acer America has suffered no harm by Prime Media's alleged overbilling.

With respect to Prime Media's first argument—that evidence of funds transfers from Acer Europe to Acer America provides necessary context to explain why credits were issued by Prime Media to Acer Europe—the court agrees with Prime Media that transfers between Acer Europe and Acer America are not only relevant but central to its defense.

United States District Court
Northern District of California

1    With respect to Prime Media's second argument—that the reimbursements directly show

2  Acer America has suffered no damages—Acer America contends that reimbursements by Acer

3  Europe are irrelevant to its damages because, irrespective of reimbursement by Acer Europe, it

4  could have purchased more advertising had it not been overcharged by Prime Media. Acer America

5  further contends that any other relevance these transfers might have is substantially outweighed by

6  the danger the jury will inappropriately conclude that Acer America has already been made whole

7  and therefore need not recover damages from Prime Media. The court agrees with Acer America

8  that any internal indemnification that Acer chooses to provide among its various corporate entities

9  is irrelevant to Acer America's right to recover for any damages it suffered from external entities.

10  However, to the extent that Prime Media offers this evidence, not to prove that the funds

11  transferred were indemnification, but rather as evidence of the billing arrangement that existed

12  among the three companies, such evidence is relevant.

13    Because this evidence is central to Prime Media's defense theory, the court does not find it

14  appropriate to exclude the evidence under Federal Rule of Evidence 403. However, this ruling is

15  without prejudice to Acer America's proposing a jury instruction appropriately limiting the jury's

16  consideration of the evidence.

17    **3.    MOTION TO EXCLUDE TESTIMONY OF BRUCE G. SILVERMAN**

18    **GRANTED IN PART AND DENIED IN PART.**

19    Acer America moves to exclude the testimony of Bruce Silverman on the grounds that:

20  (1) Silverman's experience is irrelevant; (2) Silverman's testimony would not assist the trier of fact;

21  (3) Silverman's conclusions are based on speculation or inadmissible materials; and (4) Silverman's

22  testimony would be highly prejudicial and would confuse the jury. MIL 3 at 1, ECF 148. As an

23  initial matter, the court notes that Acer America's motion requests far too much. Even the most

24  cursory review of Silverman's expert report reveals content that is both clearly relevant and

25  indisputably within Silverman's experience and expertise. *See, e.g.*, Silverman Report at ¶¶ 21-25

26  (explaining "full-disclosure," "non-disclosure," "spread," and "guaranteed" billing

27  arrangements). Having posed a blanket objection to the whole of Silverman's testimony by

28

1    characterizing his opinions in broad and sweeping generalizations, Acer America has left this court
2    to separate the wheat from the chaff without the benefit of more specific guidance.
3        The content[1] of Silverman's expert reports can be roughly categorized as follows:
4        a)  Background information regarding customs and practices within the advertising
5            industry
6        b)  Opinions, based on industry experience, that a billing arrangement like the one
7            underlying Prime Media's theory of the case would not fall outside industry norms
8        c)  Opinions, based on reading the deposition testimony of various witnesses in this case,
9            that the billing arrangement underlying Prime Media's theory of the case is the billing
10           arrangement that existed between the parties
11       d)  Opinions regarding the relative qualifications of Silverman and Stewart (Acer
12           America's expert witness)
13       With respect to background information regarding customs and practices within the
14   advertising industry, Acer America argues that "Silverman's experience does not qualify him to be
15   an expert on industry custom and practice." MIL 3 at 3. This argument is unpersuasive. A witness
16   may be qualified as an expert by experience, FRE 702, and Silverman's experience is certainly
17   sufficient. *See* Silverman CV, ECF 148-2. Whether Silverman reviewed "standards or guidance
18   regarding industry customs and practices," MIL 3 at 3, goes to the weight—not the admissibility—
19   of his testimony. Accordingly, the court finds such background information admissible.
20       With respect to whether a particular hypothetical billing arrangement would be consistent with
21   industry norms, the court also finds Silverman's opinions to be admissible. The parties intend to
22   present competing theories regarding what billing arrangement existed between the parties.
23   Whether the parties' respective theories of the case are plausible in light of industry norms is
24   information that will assist the jury in assessing the evidence presented at trial. Silverman has
25   sufficient experience to comment on whether a particular hypothetical billing arrangement would

26
27   [1] The court uses "content" to refer to both the opinions contained in the reports and the
     background knowledge and experience articulated in the reports. *See* FRE 702 ("A witness who is
28   qualified as an expert by knowledge, skill, experience, training, or education may testify in the form
     of an opinion *or otherwise* . . .") (emphasis added).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   fall within the range of practices he has observed. Accordingly, the court finds such opinions

2   admissible.

3        Aspects of Silverman's opinions do go further, however, in purporting to assess the inferences

4   that should be drawn from certain deposition testimony. With respect to these opinions, the court

5   finds Silverman's testimony inadmissible. The jury will be hearing testimony and reviewing

6   documents and will be asked to evaluate that evidence and draw reasonable inferences to determine

7   the facts of the case. This is exactly what Silverman purports to do in evaluating the deposition

8   testimony presented to him. *See, e.g.*, Silverman Report at ¶ 39 ("[H]aving read the deposition

9   transcripts . . . it appears to me that the plaintiff billed the defendant as instructed to do so by its

10  client.").

11       Of course, "[a]n opinion is not objectionable just because it embraces an ultimate issue."

12  FRE 704. But here, Silverman appears to be simply performing the role of a jury—assessing the

13  meaning and credibility of various evidence—in light of his experience in the industry. Although

14  this may involve certain inferences that are aided by Silverman's experience, it also necessarily

15  involves inferences—especially with respect to assessing credibility—that do not lie beyond the

16  common knowledge of the average layperson. Inferences of this sort are the exclusive province of

17  the jury. Any marginal benefit the jury may get from hearing Silverman's opinions on what

18  inferences should be drawn is vastly outweighed by the risk of the jury according undue weight to

19  his opinions, which would impermissibly abrogate the critical function of the jury as the trier of

20  fact. Accordingly, while Silverman may opine on whether a particular hypothetical billing

21  arrangement would be consistent with industry norms, he may not opine on what billing

22  arrangement actually existed between the parties in this litigation.

23       Finally, with respect to Silverman's opinions on the qualifications of Acer America's expert

24  witness, Stewart, the court finds Silverman's opinions admissible. The court notes initially that the

25  usual concerns at play in a *Daubert* motion are at a minimum with respect to such opinions.

26  Disputes between two experts regarding who is more qualified are the kinds of disputes where a

27  jury is least likely to improperly afford a talismanic significance to the opinions of one expert over

28  another. Accordingly, in exercising its critical "gatekeeping" function, the court assesses reliability

12

United States District Court
Northern District of California

1  in light of the jury's own ability to assess the basis for each expert's opinions. The fact that

2  Silverman's opinions are based on a review of Stewart's CV—and no further investigation—goes

3  to the credibility of Silverman's opinions, not the admissibility. Acer America may cross-examine

4  Silverman regarding Stewart's qualifications, including any that fall outside Stewart's CV (absent,

5  of course, any other basis for excluding such evidence).

6       Acer America also suggests that Silverman may offer speculation as to the accuracy of

7  Stewart's representations regarding Stewart's own qualifications. *See, e.g.*, MIL 3 at 5; Silverman

8  Rebuttal Report at ¶ 31 ("I would be very surprised if [Stewart] was ever actually ever involved in

9  negotiating an agency-client agreement . . . ."). The court simply notes that such objections are

10  more effectively addressed at trial than by preemptively speculating as to what speculations might

11  be made. Accordingly, this ruling is without prejudice to Acer America's objecting at trial to any

12  inadmissible speculation.

13  **4.   MOTION TO EXCLUDE EVIDENCE OF EIGHT CREDIT NOTES**

14  **DENIED WITHOUT PREJUDICE**.

15       Acer America moves on three grounds to exclude eight documents that Prime Media contends

16  are credit notes issued from Prime Media to Acer Europe, four spreadsheets that Prime Media

17  contends reflect invoices issued from Prime Media to Acer America, and any testimony regarding

18  the aforementioned documents. ECF 149, 149-1. First, Acer America argues that these documents

19  cannot be authenticated. FRE 901. Second, Acer America argues that these documents are hearsay

20  and Prime Media cannot present adequate evidence to establish any exceptions to the rule against

21  hearsay. FRE 802, 803. Finally, Acer America argues that the documents are irrelevant because

22  there is no evidence to link these credit notes to Acer America.[2] FRE 402.

23       Prime Media responds that this motion is premature because Prime Media intends to present

24  evidence at trial sufficient to establish the admissibility of the documents. Response at 1, ECF 156.

25  The court agrees that the objections are premature and declines to speculate as to whether Prime

26

27

28  [2] The relevance objections are not exactly the same for each credit note, but each objection shares the feature that it could be cured by the introduction of additional foundational evidence.

Media will lay a proper evidentiary foundation for these documents. Accordingly, the motion is denied without prejudice to Acer America's raising the objections at trial.

### 5.    MOTION TO EXCLUDE TESTIMONY OF CHE-MIN TU DENIED WITHOUT PREJUDICE.

Acer America seeks to preclude Che-Min Tu from testifying at trial on four separate grounds: (1) he cannot offer relevant testimony; (2) he has no personal knowledge of topics relevant to this matter; (3) his testimony would be based on inadmissible hearsay; and (4) his testimony would be cumulative of other evidence Acer America expects to be presented at trial. Prime Media responds that this motion is premature because it is based on Acer America's speculation as to Mr. Tu's anticipated testimony and that blanket preclusion of a witness's testimony is inappropriate relief for issues that can be raised by objection or through effective cross-examination. The court agrees with Prime Media that these objections are premature. The court declines to speculate as to the content of Mr. Tu's testimony and as to whether Prime Media will lay a proper evidentiary foundation for any testimony given by Mr. Tu. Accordingly, the motion is denied without prejudice to Acer America's raising the objections at trial.

Dated: 1/22/15

BETH LABSON FREEMAN
United States District Judge