UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| PRIME MEDIA GROUP, LLC,<br>    Plaintiff,<br><br>   v.<br><br>ACER AMERICA CORPORATION,<br>    Defendant. | Case No. 12-cv-05020-BLF<br><br>**ORDER DENYING ACER AMERICA'S MOTION IN LIMINE #1**<br><br>[Re: ECF 146] |

Acer America requests that the court instruct the jury that it may draw an adverse inference against Counter-Defendants Prime Media and Circle Line on the following three matters:

1. Prime Media and Circle Line intentionally invoiced Acer America for amounts in excess of the contractually allowed amount;
2. No Acer entity authorized Prime Media and Circle Line to overcharge any Acer entity for ads placed on Acer's behalf; and
3. Prime Media and Circle Line did not credit the intentional overcharges to any Acer entity.

The request is based upon Giuditta Soldadino's invocation of her privilege against self-incrimination. That invocation was accomplished by a written stipulation between the parties in advance of the scheduled deposition of Ms. Soldadino and other Circle Line employees, including Marilena Martelli and Circle Line's 30(b)(6) corporate representative. (Smith Decl., Ex 8.)

**I.   BACKGROUND**

During a meet-and-confer held on March 22, 2013, the parties agreed that any depositions that needed to be taken in Italy would be held between June 10, 2013, and June 21, 2031, in Milan, Italy. (Joint Discovery Dispute Letter #1 at 1, ECF 53.) After negotiating specific dates for each individual's deposition, Acer America noticed the deposition of Giuditta Soldadino on May 2, 2013. (*Id.*) On May 30, 2013, Counter-Defendants unilaterally withdrew the deposition, informing

Acer America that the deposition would need to be postponed until September, 2013, due to the pending Italian criminal investigation against Soldadino. (*Id.*) On August 2, 2013, Judge Lloyd, to whom all discovery disputes had been referred, ruled that the pending Italian criminal investigation was not sufficient to justify postponing the depositions any further and ordered that Soldadino be produced for deposition. (Joint Discovery Dispute Ruling #1 at 2-3, ECF 65.)

Acer America thereafter re-noticed the deposition of Soldadino for November 18-19, 2013. (Stipulation re Depositions at 1, ECF 146-1.) Circle Line and Breakout indicated to Acer America that Soldadino intended to appear for her deposition with counsel and assert a claimed legal right not to testify to questions other than those seeking background information (name, address, and education information). (*Id.*) In order to save the expense of travel and court reporters, Circle Line, Breakout, and Acer America stipulated that Soldadino would be "deemed to have appeared for [her] deposition[] on the date and place as noticed by Acer America and to have asserted [her] claimed legal right not to testify to questions other than those seeking background information (name, address, education information)." (*Id.*)

Acer submits that Soldadino is the most significant fact witness in this case. (Acer Br. at 1.) Acer further claims that she is the "owner, managing director and primary contact for Prime Media and Circle Line" (*id.*) and the only person who could have provided evidence on several core issues in this case concerning how Counter-Defendants determined the amounts reflected on their invoices submitted to Acer for payment, as well as whether credit notes were issued and applied to Acer accounts to remedy admittedly inflated invoices. Acer claims that it was thwarted in its attempt to gather that evidence by Soldadino's refusal to answer Acer's questions due to her purported assertion of rights. Other individuals identified by Counter-Defendants in their Rule 26 disclosures as knowledgeable about these issues either testified that they had no such knowledge or were former employees who were unavailable for testimony. Acer also submits evidence to fulfill its obligation to establish the existence of independent evidence of the facts about which the witness refused to testify.

Prime Media and Circle Line object. They claim that each company testified and did not refuse to answer any questions. Further, they claim that Ms. Soldadino is not a party to this action

and she is not an officer, director, or employee of Prime Media. Moreover, Ms. Soldadino did not assert her right not to testify on a question-by-question basis as required to obtain an adverse inference, and the evidence in the record and testimony anticipated at trial "completely contradicts" the inferences sought by Acer. (Counter Defendants' Opp. Br. at 1.) They assert that fairness dictates the only sanction be the preclusion of Ms. Soldadino's testimony at trial. Moreover, they argue that the invocation of her right not to testify was caused by Acer, Inc.'s[1] instituting a criminal proceeding in Italy that asserted claims for fraud related to overbilling of Acer Italy, which are similar to the claims in this action and that named Ms. Soldadino individually. Prime Media and Circle Line assert that "Acer is not entitled to an adverse inference when it has procured Ms. Soldadino's unavailability." (*Id*. at n. 1.) Finally, Prime Media and Circle Line submit that the first item has been stipulated to by the parties, negating the need for an adverse inference as to that item. (*See* Joint Pretrial Statement at 12, ECF 151.)

## II. LEGAL STANDARD

The adverse inference instruction is an "extreme sanction and should not be taken lightly." *Moore v. Gilead Sciences, Inc*. 2012 WL 669531 at *5 (N.D.Cal. 2012) (internal citations omitted). Although an adverse inference jury instruction is available as a sanction for invocation of Fifth Amendment rights in a civil case, *Baxter v. Palmigriano*, 425 U.S. 308, 316-18 (1976), the Ninth Circuit instructs that courts must first balance the hardships caused to each party. Recognizing that there is a tension between one party's Fifth Amendment right and the other party's right to a fair proceeding, consideration of when to allow the adverse inference and not to allow it must be determined on a "case-by-case basis under the microscope of the circumstances of that particular civil litigation." *Nationwide Life Ins. Co. v. Richards,* 541 F. 3d 903, 912 (9th Cir. 2008); *Doe v. Glanzer* , 232 F. 3d 1258, 1264 (9th Cir. 2000).

Thus, Acer must demonstrate that 1) there is a substantial need for the information; 2) there is not a less burdensome way of obtaining that information; and 3) there is independent evidence of the fact about which the party refuses to testify. *Nationwide*, 541 F. 3d at 912. The court must

---

[1] Acer, Inc. is Acer America's parent company.

3

further determine whether the "value of presenting the evidence is substantially outweighed by the danger of unfair prejudice to the party asserting the privilege." *Nationwide* at 912; *see also* FRE 403.

### III. DISCUSSION

#### A. WHETHER THE THREE REQUIREMENTS FOR AN ADVERSE INFERENCE ARE MET

##### 1. SUBSTANTIAL NEED FOR THE INFORMATION

Based on the evidence submitted by the parties, the court finds that Acer has demonstrated a substantial need for the information. Evidence of how the invoice amounts were determined, whether Counter-Defendants were authorized *by Acer* to inflate the invoices over the contractually agreed amounts, and whether and how the credit notes were issued and applied are all central to Acer's claims. The importance of this evidence is not disputed.

##### 2. NO LESS BURDENSOME WAY TO OBTAIN THE INFORMATION

Whether there is a less burdensome way of obtaining the evidence is not as easily determined.

In regard to the credit for overcharges, Acer contends that Ms. Soldadino is the only witness who can show how the invoiced amounts were determined and how much was actually credited back to Acer. Evidence submitted by Acer supports this contention. First, in their Rule 26 disclosures, Prime Media and Circle Line identified Ms. Soldadino as one of three witnesses able to offer testimony regarding the credit notes. One such witness, Mr. Negri, is a former employee who is unavailable. The other, Marilena Martelli, testified that she was unaware whether the inflated amounts on the invoices were ever paid back to Acer. She stated that the information was "under Prime's responsibility" (Smith Declaration, Ex. 11, Martelli Depo. at 159:5-14.) Prime Media's corporate designee, Federica Pasquato, testified in her deposition that the invoice amounts were given to her by Circle Line's claims department, consisting of Ms. Soldadino and two former employees who are unavailable (Smith Decl., Ex. 9, Pasquato Depo 23:20-24:-12; 27:17-23.) Thus, Counter Defendants have provided information leading to dead-ends in their discovery trail on these core issues and should not be rewarded for frustrating Acer America's legitimate discovery attempts. The court agrees that there is no less burdensome way of obtaining this evidence.

4

In regard to whether there is a less burdensome way of obtaining evidence of whether Acer authorized the inflated billing, there are two issues at play. The issue breaks down into preauthorization for a method of billing and later authorization for specific billing within that approved method. Although Acer has complete control over whether it authorized a method of billing, what it legitimately cannot present from its own employees is whether the actual amount billed was consistent with its approved method. Thus, Acer has demonstrated that there is no less burdensome way to submit evidence on Acer's authorization for specific overcharges.[2]

### 3. INDEPENDENT EVIDENCE OF THE FACT

Next, Acer must show that there is independent evidence of each of the three requested adverse inferences. As to item 1, the parties have stipulated to that item, thus no adverse inference would be warranted or needed. As to items 2 and 3, regarding absence of authorization by Acer for the overcharges and proof that Prime Media and Circle Line did not credit the intentional overcharges to Acer, Acer submits that it did not authorize the overcharges and that it was never provided the underlying ad cost information for each bill and thus could not and did not approve the specific amounts billed as accurate and in accord with its approved method of billing. (Smith Decl., Ex 16, Morbello Depo. at 138:9-11.) Prime Media and Circle Line contend that there is no independent evidence because Acer Group's former chief marketing officer Gianpiero Morbello testified that he knew and expected that Prime Media's invoices would sometimes be for amounts greater than the actual cost of the ads (Counter Defendants' Opp. at 3; Ex. 3, Morbello Depo at 140:3-142:1; Ex. 4, Che-Min Tu, Acer Group's former chief financial officer, Depo. at 17:16-18:21; 102:2-17.)

Reviewing this evidence as a whole, the court concludes that there is independent evidence that the overcharged amounts invoiced were not authorized. Approval of overall budgets and understanding by Acer Group that that invoices would sometimes exceed costs is not tantamount

---

[2] The court notes that Acer raises a related issue of preclusion of evidence at trial regarding the anticipated testimony that Counter-Defendants based their invoice amounts on component manufacturers' rate cards, which they allegedly failed to produce during discovery. (Acer Br. at 4.) Failure to produce requested documents is not the subject of this motion and an objection can be asserted at trial should Counter-Defendants offer evidence based on undisclosed documents.

5

to express approval of specific bills. Failure to submit the underlying cost documentation supporting the invoices along with Acer employees' testimony that the specific invoices were not approved is sufficient to support the adverse inference.

As to item 3—that Prime Media and Circle Line did not credit the intentional overcharges to any Acer entity—Acer submits its general ledger to show that it does not reflect credit of $6.8 million to offset the overcharges (Smith Decl. Ex. 18) and Counter Defendants' own expert admitted she did not find any evidence of Acer applying the credits (Smith Decl., Ex. 21, Gonzalez Depo. at 240:20-242:2). This evidence is sufficient to support the third prong required to obtain the adverse inference.

### B. WHETHER ACER AMERICA'S DECISION NOT TO SEEK APPROPRIATE RELIEF AT THE TIME OF THE DEPOSITION PRECLUDES THE RELIEF SOUGHT NOW

The court agrees with Acer America that the equities here generally weigh in its favor. However, Acer America's request for an adverse inference comes to this court on a deficient record, which dictates the result. Acer America has contended from the beginning that Soldadino's purported invocation of Fifth Amendment rights was improper and appears to be correct on this front. *See United States v. Balsys*, 524 U.S. 666, 669 (1998) (holding that "concern with foreign prosecution is beyond the scope of the Self-Incrimination Clause"). However, the proper remedy for this improper invocation would have been an order to compel responses, brought at the time of the deposition.

Upon entering into the stipulation with Circle Line and Breakout that Soldadino would be deemed to have refused to answer any questions other than background questions, Acer America was in a position to seek relief from this court in the form of an order to compel. Had Soldadino refused to comply with such an order, Acer America could have sought default judgment against Circle Line, under Fed. R. Civ. P. 37(b)(2)(A)(vi), or any other appropriate sanction. But no such motion ever came and no such order ever issued.

Although neither party has referred this court to binding authority prohibiting an adverse inference where a purported invocation of the privilege against self-incrimination was improper, the court notes that all binding authority cited in support of Acer America's motion involved

adverse inferences granted after valid invocations of the privilege. As another district has noted, there are good reasons for allowing adverse inferences only in response to valid invocations of the privilege. *See, e.g.*, *U.S. ex rel. DRC v. Custer Battles*, 415 F.Supp.2d 628, 633 (E.D. Virginia 2006) ("First, it is necessary to determine whether there was a valid basis for the witness' invocation of the privilege. This is necessary to ensure that courts, parties, and juries are not deprived of relevant evidence and to prevent the mischief and unfairness that might flow from an invalid invocation of the privilege."). Where, as here, a purported invocation of privilege is invalid, the court has the authority to compel a response, thus ensuring that the jury is not deprived of relevant evidence. This is in contrast to proper invocations of privilege, in which a court has no authority to compel a response, making an adverse inference the only available remedy for a party's deprivation of relevant evidence.

As noted above, Acer America was in a position to request a court order compelling responses to its questions. Soldadino may still have refused to respond, in which case, Acer America would have been justified in seeking sanctions against Circle Line, potentially including sanctions even harsher than an adverse inference. But, faced with a court order, Soldadino might have chosen to respond to Acer America's questions. These responses might have been beneficial or detrimental to Acer America, but in either case, the jury would not be deprived of relevant evidence in reaching its verdict. Moreover, timely responses would have allowed Acer America ample time to develop evidence to impeach or contradict the witness.

Acer America not only chose not to seek relief based on an invalid invocation of privilege, it also chose to forego creation of a record as to the specific questions that would be asked of Soldadino.[3] Because there is no record as to the questions that would have been asked, the adverse

---

[3] Acer America submitted several cases to this court that it contends show adverse inferences may be drawn in the absence of specific individual questions being asked and being met with an invocation of privilege. The two most relevant cases were *SEC v. Jasper*, 678 F.3d 1116 (9th Cir. 2012), and *Cowans v. City of Boston*, 2007 WL 28419 (D.Mass.). However, the cases presented to the court all involve factual scenarios very different from the one presented here.
In *Jasper*, individual questions *had* been asked of the witness, each question individually prompting an invocation of the privilege against self-incrimination. *See* 678 F.3d at 1125. The only issue addressed by the 9th Circuit was whether "a district court must make its evidentiary rulings and tailor its adverse inference instructions on a 'question-by-question basis.'" *Id*. at 1126. The 9th

7

inferences Acer America now seeks would require a jury to infer (1) that Acer America *would have* asked certain questions at Soldadino's deposition; (2) that Soldadino *would have* invoked the privilege against self-incrimination in response to those questions (rather than claiming not to understand the questions or not to know the answer); and (3) that the truthful answers, had the privilege not been invoked, *would have* been detrimental to Counter-Defendants. This, in the words of the *Glanzer* court, "would be constructing an inference on another inference." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1266 n.2 (9th Cir. 2000).[4]

The court is sympathetic to Acer America's frustrations; Acer America believes—and may well be correct—that it was unfairly and improperly deprived of evidence critical to its case. But Acer America was not without recourse to seek relief during discovery. Indeed, had Acer America sought an order to compel, it would have either obtained the evidence it sought in a timely manner or obtained grounds for requesting an even stronger sanction against Circle Line than it now seeks. Acer America also had the option of creating a record that would support a motion for an adverse inference. As counsel for Counter-Defendants noted at the hearing on Acer America's motion, "it was not our job to preserve an adverse inference motion for Acer America, and if their goal in this particular issue was to obtain an adverse inference, they had the duty to preserve the record and to present an adequate record in order to do that, and they have not done that." (Hearing Transcript at 20:4-9, ECF 188.) Having failed to create a proper record to support its motion, Acer America

---

Circuit did not address whether an adverse inference instruction is appropriate where no questions were actually asked.

In *Cowans*, after a witness issued a blanket invocation of privilege and left in the middle of a deposition, thereby refusing to sit for individual questions, the deposing party sought a court order requiring the witness to appear and invoke the privilege on a question-by-question basis. *Cowans* at *1-2. The party seeking the order specifically identified creating a record for an adverse inference instruction as its motivation for seeking such question-by-question invocations. *Id.* at *2. In that case, the court determined that "in light of LeBlanc's concession that an adverse inference instruction is appropriate," the court was prepared to grant the adverse inference instruction without requiring the witness to invoke the privilege on a question-by-question basis. The court was not faced with opposition to an adverse inference instruction in the absence of question-by-question invocations of privilege.

[4] At the court's request, Acer America submitted four questions it contends would have been submitted to Soldadino at her deposition had it taken place. These questions were crafted to support a question-by-question consideration of the adverse inference instruction. However, upon review, the court is persuaded that *ex post facto* submission of these questions is insufficient to overcome the problems surrounding constructing an inference upon an inference in order to reach the adverse inference.

now asks this court to instruct the jury that it may draw inferences from questions that could have been, but never were, asked of Ms. Soldadino.

On the record before it, the court concludes that an adverse inference instruction would not be appropriate. However, Acer America has made an adequate showing to justify preclusion of testimony by Ms. Soldadino at trial.[5] The court also notes that this ruling does not preclude Acer America from arguing to the jury what inferences should be drawn from Soldadino's failure to testify in support of Circle Line's theory of the case. The court simply declines to provide its imprimatur regarding such inferences by means of a jury instruction.

## IV. ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

- Acer America's Motion in Limine #1 is **DENIED**.
- Ms. Soldadino will be **PRECLUDED** from testifying at trial.

Dated: February 6, 2015

_____
BETH LABSON FREEMAN
United States District Judge

---

[5] Counsel for Counter-Defendants acknowledged as much at the hearing. Hearing Transcript at 21:16-19 (Counsel for Counter-Defendants: "[Soldadino]'s a favorable witness for us. She's not going to be a favorable witness for Acer America. And so it is penalty for us that based on the circumstances of this case that she cannot come in and testify at trial.")

9