CHARLES R. BERNARDINI (*pro hac vice*)
crbernardini@uhlaw.com
KEVIN P. SHEA (*pro hac vice*)
kpshea@uhlaw.com
UNGARETTI & HARRIS, LLP
70 W. Madison St., Suite 3500
Chicago, Illinois 60602
Telephone: (312) 977-4400

JEFFREY E. ESSNER (STATE BAR NO. 121438)
jessner@hopkinscarley.com
ERIK P. KHOOBYARIAN (STATE BAR NO. 226749)
ekhoobyarian@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 S First Street
San Jose, CA 95113-2406

Attorneys for Plaintiff/Counter-Defendant Prime Media Group
LLC and Counter-Defendants Breakout S.r.l., Circle Line
Marketing & Communication S.r.l., and Keechwood Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER AMERICA CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>PRIME MEDIA GROUP LLC,<br><br>    Defendant. | Case No. 5:12-cv-05020-BLF<br><br>**AMENDED JOINT PRETRIAL STATEMENT AND ORDER**<br><br>Dept.: Courtroom 3, 5th Floor<br>Judge: Honorable Beth Labson Freeman<br><br>Date.: Jan. 23, 2015 at 9:00 a.m.. |
| ACER AMERICA CORPORATION<br><br>    Counterclaimant,<br><br>v.<br><br>PRIME MEDIA GROUP LLC, CIRCLE LINE MARKETING & COMMUNICATION S.R.L., BREAKOUT S.R.L., AND KEECHWOOD LIMITED,<br><br>    Counter-Defendants. | |

Pursuant to Judge Freeman's Standing Order Re Final Pretrial Conference – Jury Trial and orders at the January 15, 2015 Pretrial Conference, Plaintiff/Counter-Defendant Prime Media Group, LLC ("Prime Media") and Counter-Defendants Breakout S.r.l. ("Breakout"), Circle Line Marketing & Communication S.r.l. ("Circle Line"), and Keechwood Limited ("Keechwood") (collectively "Counter-Defendants"), and Defendant/Counterclaimant Acer America Corporation ("Acer America"), collectively referred to herein as "the Parties," hereby submit this Amended Joint Pretrial Statement and Order.

**1.    The Action.**

a.    The Parties

Prime Media

Prime Media is a Delaware limited liability company with its principal place of business in Switzerland, with its operations solely conducted by its Manno, Switzerland branch.  At all relevant times, Prime Media was in the business of providing print, radio, television, and internet advertising and media buying services.

Acer America

Acer America is a subsidiary of Acer Inc., an information technology and electronics corporation.  At all times relevant, Acer America was and is a corporation organized and existing under the laws of the State of California, with headquarters in San Jose, California.

Circle Line

Circle Line was a firm that carried out advertising and marketing activities with a place of business at Via Anton Francesco Grazzini 7, 20158 Milano, Italy.  Circle Line was placed into liquidation on January 25, 2012.  Circle Line in Liquidation is not allowed by law to operate commercially.

Breakout

At all times relevant, Breakout was a firm that carried out advertising and marketing activities with a principal place of business at Via Vincenzo Monti 41, 20123 Milano, Italy.

Keechwood

Keechwood is a company organized under the laws of the Republic of Ireland with a place

- 2 -

1  of business at 24 Farney Park, Sandymount, Dublin 4, Ireland. At all relevant times, Keechwood

2  acted as Prime Media's billing agent.

3         b.      Substance of the Action.

4         [*A concise statement identifying the claims and defenses that remain to be decided; the*

5  *elements of each claim and defense; and the pleading in which each claim and defense is pled. In*

6  *accordance with Federal Rule of Civil Procedure 16(c), parties will be precluded from presenting*

7  *claims or defenses not set forth in the Joint Pretrial Statement and Order.*]

8         On September 26, 2012, Prime Media filed a complaint for breach of contract, account

9  stated, and, in the alternative, unjust enrichment, implied-in-fact contract, and services rendered,

10 alleging that Acer America failed to pay over $7.6 million for advertising and media buying

11 services performed by Prime Media on behalf of Acer America.

12        On October 18, 2012, Acer America filed an answer, defenses, and counterclaims to

13 Prime Media's complaint. Acer America's answer denied all material allegations in Prime

14 Media's complaint. Acer America counterclaimed against the Counter-Defendants based upon

15 their alleged fraudulent deceit, breach of contract, and failure to provide an accounting. Acer

16 America's counterclaims allege that Counter-Defendants overcharged Acer America for

17 marketing and advertising services. Counter-Defendants answered Acer America's counterclaim

18 and denied all material allegations.

19        **Plaintiff Prime Media's remaining claims against Defendant Acer America**

20        In its complaint (ECF 1), Prime Media alleged the following causes of action against Acer

21 America: (1) breach of contract for the Gateway Campaign; (2) breach of contract for the Iconia

22 Tablet Campaign; (3) account stated; (4) unjust enrichment; (5) implied-in-fact contract for the

23 Gateway Campaign; (6) implied-in-fact contract for the Iconia Campaign; (7) services rendered

24 for the Gateway Campaign; and (8) services rendered for the Iconia Tablet Campaign. On

25 December 17, 2014, this Court entered summary judgment in favor of Acer America, and

26 dismissed Prime Media's account stated claim. (ECF 135). Thus, the following claims are at

27 issue as between Prime Media and Acer America:

28        *(1) Breach of contract for the Gateway Campaign (Count 1)*

*(2) Breach of contract for the Iconia Campaign (Count 2)*

The elements of breach of contract are: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damages to the plaintiff. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

*(3) Unjust enrichment claim.*

*Per the Court's instruction at the pretrial conference, this claim may be eliminated by the parties' stipulation to the existence of a contract between Prime Media and Acer America. Acer America objects to Prime Media asserting unjust enrichment as an affirmative claim because it is not an independent cause of action.*

*Unjust enrichment elements.*

The establish a claim for unjust enrichment, plaintiff must prove the following: (1) that defendant received money that was intended to be used for the benefit of plaintiff; (2) that the money was not used for the benefit of plaintiff; and (3) that defendant has not given the money to plaintiff.  1-300 CACI 370.

*(4)      Implied-in-fact contract for the Gateway Campaign (Count 5)*

*(5)      Implied-in-fact contract for the Iconia Campaign (Count 6)*

*Acer America contests that Prime Media has any implied-in-fact contract claims since it has stipulated to the existence of a contract.*

*Implied-in-fact contract elements.*  The elements of an implied-in-fact contract are: (1) the existence of the contract, which is implied from the parties' conduct; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011); *Chandler v. Roach*, 156 Cal. App. 2d 435, 440 (Cal. Ct. App. 1957) ("The only distinction between an implied-in-fact contract and an express contract is that, in the former, the promise is not expressed in words but is implied from the promisor's conduct.").

*(6) Services rendered for Gateway Campaign (Count 7)*

*(7) Services rendered for Iconia Campaign (Count 8)*

*Services rendered elements.*  To establish a claim for services rendered, plaintiff must

- 4 -

prove the following: (1) that defendant requested, by words or conduct, that plaintiff perform services for the benefit of defendant; (2) that plaintiff performed the services as requested; (3) that defendant has not paid plaintiff for the services; and (4) the reasonable value of the services that were provided.  1-300 CACI 371.

<u>Acer America's remaining defenses to Prime Media's complaint.</u>

In its answer to Prime Media's complaint (ECF 12), Acer America asserted the following affirmative defenses: (1) failure to state a claim; (2) waiver; (3) estoppel; (4) failure to mitigate; (5) offset; (6) unenforceability of contract; (7) Plaintiff's breach; (8) no meeting of the minds; (9) breach of good faith and fair dealing; (10) unjust enrichment; (11) performance prevented; (12) statute of limitations; (13) statute of frauds; and (14) fraud.  The elements for Acer America's affirmative defenses are as follows:

*Failure to State a Claim*: A party must state a cause of action to which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Counter-Defendants dispute the validity of this affirmative defense.

*Waiver*: Under California law, a waiver is the intentional relinquishment or abandonment of a known right or privilege.  *Smith v. Selma Community Hosp.*, 164 Cal. App. 4th 1478, 1506 (Cal. Ct. App. 2008).

*Estoppel*: To establish estoppel, (a) the party to be estopped must know the facts; (b) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (c) the latter must be ignorant of the true facts; and (d) he must rely on the former's conduct to his injury.  *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1104 (N.D. Cal. 2003).

*Failure to Mitigate*:  California law is clear that a "plaintiff who suffers a damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided."  *Shaffer v. Debbas*, 17 Cal App. 4th 33, 41 (Cal. Ct. App. 1993).

*Offset*: Offset, otherwise known as setoff, is appropriate when mutual demands for money are held under such circumstances that one of them should be applied against the other and only

- 5 -

1  the balance is recovered. Cal. Code Civ. Proc. § 431.70; Fassberg Constr. Co. v. Housing

2  Authority of City of Los Angeles, 152 Cal. App. 4th 720, 762 (Cal Ct. App. 2007).

3      *Unenforceability of contract*: To establish an enforceable contract, plaintiff must show (a)

4  that the contract terms were clear enough that the parties could understand what each was

5  required to do; (b) that the parties agreed to give each other something of value; and (c) that the

6  parties agreed to the terms of the contract. Cal. Civ. Code §§ 1550, 1565, 1605. If these elements

7  are not met, the contract is unenforceable.

8      *Plaintiffs' breach*: "[I]t is elementary that one party to a contract cannot compel another to

9  perform while he himself is in default." *Lewis Publishing Co. v. Henderson*, 103 Cal. App. 425,

10  429 (Cal. Ct. App. 1930); *see also* Cal. Civ. Code § 1439.

11      *No Meeting of the Minds*: To establish the existence of an enforceable contract, a plaintiff

12  must show "a meeting of the minds upon the essential features of the agreement." *Krasley v.*

13  *Super. Ct.*, 101 Cal. App. 3d 425, 431 (Cal. Ct. App. 1980).

14      *Breach of Good Faith and Fair Dealing*: The elements for a breach of the covenant of

15  good faith and fair dealing requires (a) the existence of a contractual relationship; (b) implied

16  duty; (c) breach; and (d) causation of damages. *Smith v. City & Cnty. of S.F.*, 225 Cal. App. 3d

17  38, 49 (Cal. Ct. App. 1990).

18      *Unjust Enrichment*: The elements of unjust enrichment are (a) receipt of a benefit and (b)

19  unjust retention of the benefit at another's expense. *Hirsch v. Bank of America*, 107 Cal. App. 4th

20  708, 717 (Cal. Ct. App. 2008). Prime Media contests this defense because Prime Media and Acer

21  America have stipulated to the existence of a contract.

22      *Performance Prevented*: When one party to a contract prevents the performance of

23  another, the other party's nonperformance does not constitute breach. *Hines v. Kukes*, 167 Cal.

24  App. 4th 1174, 1185 (Cal. Ct. App. 2008).

25      *Statute of Limitations*: The statute of limitations for breach of contract that is not based on

26  a written agreement is two years from the discovery of the loss or damage suffered by the

27  aggrieved party, whether the agreement is oral or implied in fact. Cal. Code Civil Proc. § 339.

28  The statute of limitations for breach of a written contract is four years. Cal. Code Civil Proc. §

- 6 -

337.

*Statute of Frauds*:  Agreements that by its terms is not to be performed within a year from the making thereof are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent.  Cal. Code Civil Proc. § 1624(a)(1).

*Fraud*: The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the falsity; (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage.  *Lazar v. Super. Ct.*, 909 P.2d 981, 985 (Cal. 1996).

<u>Acer America's counterclaim.</u>

In its counterclaim (ECF 12), Acer America alleged the following causes of action against the Counter-Defendants: (1) fraudulent deceit; (2) breach of contract; and (3) accounting.

Remaining claims against Counter-Defendants

(1) Fraudulent deceit.  (Count 1)

    This claim remains pending against all Counter-Defendants, (a) Prime Media, (b) Circle Line, (c) Breakout & (d) Keechwood.

To establish a fraudulent deceit claim, Acer America must establish(a) a misrepresentation (false representation, concealment, or nondisclosure) by Counter-Defendants;  (b) Counter-Defendants' knowledge of the falsity; (c) Counter-Defendants' intent to defraud, i.e. to induce reliance; (d) Acer America's justifiable reliance; and (e) resulting damage to Acer America. *Lazar v. Super. Ct.*, 909 P.2d 981, 985 (Cal. 1996).

(2) Breach of contract.  (Count 2).

    This claim remains pending against all Counter-Defendants: (a) Prime Media; (b) Circle Line; (c) Breakout; (d) Keechwood.

To establish breach of contract claim, Acer America must show (a) the existence of a contract; (b) Counterclaimant's performance or excuse for non-performance; (c) Counter-Defendants'  breach; and (d) damage to Counterclaimant therefrom.  *Abdelhamid v. Fire Ins. Exchange*, 106 Cal. Rptr.3d 26, 32 (Cal. Ct. App. 2010).

- 7 -

(3) Claim for an accounting.  (Count 3)

> This claim remains pending against all Counter-Defendants: (a) Prime Media; (b) Circle Line; (c) Breakout; (d) Keechwood

To establish an accounting claim, Acer America must show (a) that a relationship exists between Acer America and Counter-Defendants that requires an accounting, and (b) that some balance is due to Acer America that can only be ascertained by an accounting.  *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (Cal. Ct. App. 2009).

> <u>Counter-Defendants' defenses to Acer America's counterclaim.</u>

In Counter-Defendants' answer to Acer America's counterclaim (ECF 45-47), Counter-Defendants denied all material allegations and asserted the following affirmative defenses: (1) waiver; (2) estoppel; (3) offset; (4) good faith and fair dealing; (5) unjust enrichment; (6) performance prevented; and (7) statute of limitations.

*(1) Waiver*.  This defense remains pending for all Counter-Defendants.

> Under California law, a waiver is the intentional relinquishment or abandonment of a known right or privilege.  *Smith v. Selma Community Hosp.*, 164 Cal. App. 4th 1478, 1506 (Cal. Ct. App. 2008).

*(2) Estoppel*.  This defense remains pending for all Counter-Defendants

> To establish estoppel, (a) the party to be estopped must know the facts; (b) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (c) the latter must be ignorant of the true facts; and (d) he must rely on the former's conduct to his injury.  *Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs.*, 295 F. Supp. 2d 1091, 1104 (N.D. Cal. 2003).

*(3) Offset*.  This defense remains pending for all Counter-Defendants

> Offset, otherwise known as setoff, is appropriate when mutual demands for money are held under such circumstances that one of them should be applied against the other and only the balance is recovered.  Cal. Code Civ. Proc. § 431.70; Fassberg Constr. Co. v. Housing Authority of City of Los Angeles, 152 Cal. App. 4th 720, 762 (Cal Ct.

- 8 -

App. 2007).

*(4) Breach of Good Faith and Fair Dealing.*  This defense remains pending for all Counter-Defendants

The elements for a breach of the covenant of good faith and fair dealing requires (a) the existence of a contractual relationship; (b) implied duty; (c) breach; and (d) causation of damages.  *Smith v. City & Cnty. of S.F.*, 225 Cal. App. 3d 38, 49 (Cal. Ct. App. 1990).

*(5) Unjust Enrichment:*  This defense remains pending as to all Counter-Defendants subject to the Court's ruling on the unjust enrichment issue defined above.  The elements of unjust enrichment are (a) receipt of a benefit and (b) unjust retention of the benefit at another's expense.  *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 717 (Cal. Ct. App. 2008).

*(5) Performance Prevented.*This defense remains pending for all Counter-Defendants.  When one party to a contract prevents the performance of another, the other party's nonperformance does not constitute breach.  *Hines v. Kukes*, 167 Cal. App. 4th 1174, 1185 (Cal. Ct. App. 2008).

*(6) Statute of Limitations.*  This defense remains pending for all Counter-Defendants.  The statute of limitations for breach of contract that is not based on a written agreement is two years from the discovery of the loss or damage suffered by the aggrieved party, whether the agreement is oral or implied in fact.  Cal. Code Civil Proc. § 339.  The statute of limitations for breach of a written contract is four years.  Cal. Code Civil Proc. § 337.  The statute of limitations for fraud is three years.  Cal. Code Civil Proc. § 338.

c.      Relief Sought.

[*A statement of all relief sought, itemizing all elements of damages claimed.*]

Relief Sought by Prime Media.

As explained in detail in Andrea Gonzalez's expert reports, Prime Media is seeking $7,454,526.79 of unpaid invoices, plus prejudgment interest as outlined in Ms. Gonzalez's report.

- 9 -

<u>Relief Sought by Acer America.</u>

As explained in Gordon Klein's expert report, Acer America seeks $3.5 million in damages: the amount overcharged by Counter-Defendants for advertisements placed on Acer America's behalf offset by the amount of the outstanding invoices. Cal. Code Civ. Proc. § 431.70; *Fassberg Constr. Co. v. Housing Authority of City of Los Angeles,* 152 Cal. App. 4th 720, 762 (Cal Ct. App. 2007) (granting offset where there were mutual demands for money).

Acer America also seeks a Court Order compelling Counter-Defendants to provide an accurate accounting of its books and records and for payment to Acer America of the amount due from the Counter-Defendants as a result of the fraudulent accounting.

Acer America also seeks prejudgment interest on any amounts awarded.

Acer America also seeks punitive damages based upon its fraud claim. Counter-Defendants contest that Acer America has pled a claim for punitive damages or is entitled to them.

d.      <u>Federal Jurisdiction and Venue.</u>

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 over Prime Media's claims, Acer America's counterclaims, and Circle Line's counterclaim. The Parties are citizens of different states and the amount in controversy exceeds $75,000. Prime Media is a Delaware limited liability company with its principal place of business in Switzerland. Prime Media has one member, Fizzle Investments Limited. Fizzle Investments Limited is a Cypriot company with its principal place of business in Cyprus. Acer America is a California corporation with its principal place of business in California. Circle Line is an Italian corporation with its principal place of business in Italy. Breakout is an Italian corporation with its principal place of business in Italy. Keechwood is a company organized under the laws of the Republic of Ireland with its principal place of business in Ireland.

Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b) because a substantial part of the transactions underlying the dispute took place within this judicial district. Acer America also is located within this district. All Parties have been served.

- 10 -

1    **2.      Factual Basis of the Action.**

2           a.      Undisputed Facts.

3           [*A concise statement of all facts that may be incorporated into the trial record by*

4    *stipulation of the parties.*]

5                   • Acer Inc. is a computer manufacturer headquartered in Taipei, Taiwan.

6                   • Acer America is an ultimate subsidiary of Acer Inc.  It is located in San Jose,

7                       California.

8                   • Acer's Europe, Middle East, and Africa ("EMEA" or "Acer Europe") subsidiary

9                       was and is based in Manno, Switzerland.

10                  • Between 2008 and 2011, Acer Inc. had a centralized marketing department that

11                      conducted activities on behalf of all of the Acer entities.  It was located in Acer's

12                      EMEA office.

13                  • Acer America also had its own in-house marketing department.

14                  • Acer's centralized marketing department made strategy and budgeting decisions

15                      for the Company's marketing and advertising.

16                  • Gianfranco Lanci became CEO and President of Acer Inc. on June 13, 2008.

17                  • Che Min Tu was named CFO of Acer Inc. on November 1, 2008.

18                  • Gianpiero Morbello became Acer Inc.'s Chief Marketing Officer in January 2008.

19                  • Mr. Lanci resigned from Acer Inc. on March 31, 2011.

20                  • Mr. Morbello tendered his resignation from Acer Inc. in April 2011, which was

21                      effective September 30, 2011.

22                  • Prime Media's office was located in same building as Acer EMEA in Manno,

23                      Switzerland.

24                  • To build computers, Acer Inc. utilized various component manufacturers. These

25                      component manufacturers included Microsoft, AMD, and Intel.  To share the cost

26                      of advertising with Microsoft, AMD, and Intel, Acer Inc. entered into cooperative

27                      agreements.

28                  • Pursuant to these cooperative agreements, for every component manufacturer

- 11 -

product purchased by Acer Inc., the component manufacturer contributed a fixed amount to an account designated for Acer to spend on marketing and advertising.

- Circle Line was responsible for submitting claims to Acer Inc.'s cooperative partners for reimbursement of cooperative advertising funds to Acer Inc.

- In 2005, Pleasing Advertising and Acer Inc. entered into a contract for Pleasing to "create, elaborate, produce, co-ordinate and manage all marketing, communication and public relations activities in relation to the products marketed by [Acer Inc.] on the IT [Information Technology] and Consumer Electronics Market, under Acer trademark or any other brand name that may be introduced…" (the "Pleasing Contract").

- Article 7.1 of the Pleasing Contract provided "as remittance for all the communication activities. . . , Acer Inc.'s European subsidiaries will pay your remuneration on monthly basis subdivided into the individual activities carried out per the attachments, as well as a monthly fee of 2% to be calculated on all amounts invoiced to you for media buying and for the promulgation of the advertising campaigns entrusted to Pleasing."

- Pleasing was paid for its creative work according to a fee schedule attached to the Pleasing Contract.

- In 2006, the media buying responsibilities of the Pleasing Contract were assigned to Prime Media.

- From 2007-2011, Prime Media acted as a media buyer for Acer America.

- From 2007-2011, Circle Line performed creative work for Acer America.

- Circle Line was compensated for its creative work according to the fee schedule attached to the Pleasing Contract.

- Breakout was subsequently established to develop the advertisements for two companies acquired by Acer Inc., Gateway and Packard-Bell.

- Breakout's office was located within the office of Circle Line in Milan, Italy.

- Prime Media used a billing agent, Keechwood, to issue invoices to Acer America.

- To assist it with media buying, Prime Media engaged third parties in the U.S. to place certain ads on Acer America's behalf.  Examples of these third parties include M3 Media, Valassis, and IDG.
- Starting in 2007, Prime Media (and subsequently in 2009 Keechwood) directly invoiced Acer America for the ads placed on its behalf.
- Acer America was the Acer entity responsible for paying the invoices issued to it by Prime Media, Circle Line, and Keechwood.
- Prime Media and Keechwood issued certain invoices to Acer America for amounts that were greater than the cost of advertising plus a 2% commission.
- The process for determining the amount invoiced to Acer America remained the same throughout the parties' relationship.
- Article 12 of The Pleasing Contract contained a termination provision.
- On August 10, 2011, Acer Inc. sent a purported letter of termination to Circle Line.

b.    <u>Disputed Facts.</u>

[*A concise statement of all facts that are disputed and will be litigated at trial.*]

The Parties dispute the following:

**Prime Media v. Acer America**

- Whether Prime Media was authorized to charge amounts higher than the costs of advertising plus 2% commission for media buying;
- Whether Prime Media reimbursed Acer America for any overcharges;
- Whether Prime Media reimbursed any other Acer entity for any overcharges to Acer America;
- Which invoices issued to Acer America for advertisements placed on its behalf remain unpaid;
- Whether Prime Media performed the services for which it invoiced Acer America;
- Whether the parties understood Breakout, Circle Line, and Prime Media to be the same entity;

- Whether, and if so, how much Prime Media overcharged Acer America for advertisements placed on its behalf;

- Whether, and if so, how much Acer America owes Prime Media for unpaid invoices;

- Whether Acer Inc., Acer Europe and/or Acer America were aware of Prime Media's billing practices;

- Whether Acer Inc., Acer Europe and/or Acer America directed and authorized the billing practices at issue;

- Whether Prime Media and Acer America have a relationship that requires an accounting;

- Whether Prime Media owes a balance to Acer America due to overcharges issued to it, which Acer America paid;

- Whether, and if so, how much Acer America was harmed by Prime Media's fraudulent conduct;

- Whether, and if so, how much Acer America was harmed by Prime Media's breach of contract;

- Whether Prime Media employed Keechwood as its billing agent for media buying on behalf of Acer America;

- Whether Acer America waived any of its rights under its contract with Prime Media;

- Whether Acer America is estopped to enforce or rely on its contract with Prime Media

- Whether Prime Media has an offset against Acer America for any amounts owed to Acer America

- Whether Acer America breached a duty of good faith and fair dealing under the parties' contract

- Whether Prime Media's performance was prevented by Acer America's conduct

- Whether Acer America timely filed its claims.

- Whether Prime Media waived any of its rights under its contract with Acer America;

- Whether Prime Media is estopped to enforce or rely on its contract with Acer America;

- Whether Prime Media failed to act reasonably to mitigate its damages;

- Whether Acer America has an offset against Prime Media for any amounts owed to Prime

- 14 -

Media;

- Whether Acer America is excused from full performance due to Prime Media's breaches of the contract;
- Whether any agreement between Acer America and Prime Media outside of the agreement that Prime Media would perform media billing services for Acer America in exchange for reimbursement of advertising costs plus 2% commission, if one is found, is enforceable;
- Whether, if such agreement is found, Prime Media reached a meeting of the minds with Acer America for any agreement between the parties beyond the agreement that Prime Media would perform media buying services for Acer America in exchange for reimbursement of advertising costs plus 2%;
- Whether Prime Media breached a duty of good faith and fair dealing under the parties' contract;
- Whether Prime Media was unjustly enriched at the expense of Acer America;
- Whether Acer America's performance was prevented by Prime Media's conduct;
- Whether Prime Media timely filed its claims;
- Whether any oral contract, if one is found, between Acer America and Prime Media is barred by the statute of frauds;
- Whether Prime Media's breach of contract claims are barred by fraud committed by Prime Media and/or its agents.

**Acer America v. Circle Line**

- Whether Circle Line and Acer America had any agreement (implied or express) for media buying;
- If an agreement is found to exist between Circle Line and Acer America, the amount that Circle Line was entitled to invoice Acer America for media buying;
- Whether Circle Line breached any agreement with Acer America (if said agreement is found to exist);
- Whether Circle Line performed the services for which it invoiced Acer America;
- Whether, and if so, how much Circle Line through Counter-Defendants overcharged Acer

- 15 -

America for advertisements placed on its behalf;

- Whether Acer Inc., Acer Europe and/or Acer America were aware of Circle Line's billing practices

- Whether Acer Inc., Acer Europe and/or Acer America directed and authorized the billing practices at issue;

- Whether Circle Line and Acer America have a relationship that requires an accounting;

- Whether Circle Line owes a balance to Acer America due to overcharges issued to it, which Acer America paid;

- Whether, and if so, how much Acer America was harmed by Circle Line's fraudulent conduct;

- Whether, and if so, how much Acer America was harmed by Circle Line's breach of contract;

- Whether Acer America waived any of its rights under its contract with Circle Line (assuming a contract is found);

- Whether Acer America is estopped to enforce or rely on its contract with Circle Line (assuming a contract is found)

- Whether Circle Line has an offset against Acer America for any amounts owed to Acer America

- Whether Acer America breached a duty of good faith and fair dealing under the parties' contract (assuming a contract is found)

- Whether Circle Line's performance was prevented by Acer America's conduct (assuming a contract is formed)

- Whether Acer America timely filed its claims.

**Acer America v. Breakout**

- Whether Breakout had any agreement (implied or express) with Acer America for media buying;

- Whether Breakout invoiced Acer America through Counter-Defendants for any services;

- Whether Acer America paid Breakout through Counter-Defendants for any services;

- 16 -

- Whether Breakout performed the services on behalf of Acer America;

- Whether Breakout is a closely-related entity to Circle Line and Prime Media;

- Whether the parties understood Breakout, Circle Line, and Prime Media to be the same entity;

- Whether Breakout issued invoices to Circle Line and Prime Media with the intent that Acer America would rely upon those amounts to pay Prime Media;

- Whether, and if so, how much Breakout through Counter-Defendants overcharged Acer America for advertisements placed on its behalf;

- Whether Acer Inc., Acer Europe and/or Acer America were aware of Breakout's billing practices;

- Whether Acer Inc., Acer Europe and/or Acer America directed and authorized the billing practices at issue;

- Whether Breakout and Acer America have a relationship that requires an accounting;

- Whether Breakout owes a balance to Acer America due to overcharges issued to it, which Acer America paid;

- Whether, and if so, how much Acer America was harmed by Breakout's fraudulent conduct;

- Whether, and if so, how much Acer America was harmed by Breakout's breach of contract;

- Whether Acer America waived any of its rights under its contract with Breakout (assuming a contract is found);

- Whether Acer America is estopped to enforce or rely on its contract with Breakout (assuming a contract is found)

- Whether Breakout has an offset against Acer America for any amounts owed to Acer America

- Whether Acer America breached a duty of good faith and fair dealing under the parties' contract (assuming a contract is found)

- Whether Breakout's performance was prevented by Acer America's conduct (assuming a

- 17 -

contract is formed)

- Whether Acer America timely filed its claims.

**Acer America v. Keechwood**

- Whether Keechwood had any agreement with Acer America for billing on media buying;

- If an agreement is found to exist, whether Keechwood overcharged Acer America for media buying;

- Whether, and if so, how much Keechwood overcharged Acer America for advertisements placed on its behalf;

- Whether Acer Inc., Acer Europe and/or Acer America were aware of Keechwood's billing practices

- Whether Acer Inc., Acer Europe and/or Acer America directed and authorized the billing practices at issue.

- Whether Keechwood acted as a billing agent for Prime Media

- Whether Keechwood and Acer America have a relationship that requires an accounting;

- Whether Keechwood owes a balance to Acer America due to overcharges issued to it, which Acer America paid;

- Whether, and if so, how much Acer America was harmed by Keechwood's fraudulent conduct;

- Whether, and if so, how much Acer America was harmed by Keechwood's breach of contract;

- Whether Acer America waived any of its rights under its contract with Keechwood (assuming a contract is found);

- Whether Acer America is estopped to enforce or rely on its contract with Keechwood (assuming a contract is found)

- Whether Keechwood has an offset against Acer America for any amounts owed to Acer America

- Whether Acer America breached a duty of good faith and fair dealing under the parties' contract (assuming a contract is found)

- 18 -

- Whether Keechwood's performance was prevented by Acer America's conduct (assuming a contract is formed)

- Whether Acer America timely filed its claims.

**3.**     **Disputed Legal Issues.**

[*A concise statement of each disputed point of law, citing relevant statutes and decisions.*]

The legal disputes are: (1) whether an enforceable contract exists between Acer America, on the one hand, and any or all of Counter-Defendants Circle Line, Breakout and/or Keechwood on the other hand; (2) whether Acer America committed a breach of its contract with Prime Media; (3) whether any of the Counter-Defendants committed a breach of their contracts with Acer America (assuming a contract is found between Acer America, on the one hand, and any or all of Counter-Defendants Circle Line, Breakout and/or Keechwood, on the other hand); (4) whether any of the Counter-Defendants committed fraud against Acer America; and (5) the existence of and/or amount of damages incurred by Prime Media as a result of Acer America's conduct, and/or the existence of and/or amount of damages incurred by Acer America as a result of the conduct of any of the Counter-Defendants.

**4.**     **Estimate of Trial Time.**

[*An estimate of the total number of hours or days needed for trial.*]

Trial is scheduled to take place on February 2, 2015 through February 16, 2015, for a total of 9 trial days.  Over the nine trial days, the Parties will have 54.50 total hours for trial (6.50 hours/day on Mondays, Wednesdays, and Fridays; 4.50 hours/day on Tuesdays; and no trial on Thursdays).

The Parties anticipate needing all 54.50 hours to complete the trial.

**5.**     **Trial Alternatives and Options.**

a.     Settlement Discussion.

[*A statement summarizing the status of settlement negotiations and indicating whether further negotiations are likely to be productive.*]

On October 9, 2014, the Parties participated in Court-ordered mediation with Mediator James Gilliland.  The Parties did not reach a settlement and no further negotiations are likely to

- 19 -

1    be productive.

2              b.       Amendments or Dismissals.

3          [*A statement of proposed amendments to the pleadings or dismissals of parties, claims, or*

4    *defenses.*]

5          None, except that, on December 17, 2014, this Court entered summary judgment in favor

6    of Acer America on Prime Media's account stated claim. (ECF 135).  Circle Line has also

7    voluntarily dropped its Counterclaim against Acer America.

8              c.       Bifurcation or Separate Trial of Issues.

9          [*A statement whether bifurcation or a separate trial of specific issues is feasible and*

10   *desired.*]

11         Bifurcation and/or a separate trial of specific issues is not feasible and not desired.

12   **6.    Preparation for Trial.**

13         The following appendices were filed as appendicess to the parties' First Joint Pretrial

14   Statement and Order:

15         Exhibit A – Witnesses Appendix;

16         Exhibit B – Exhibits Appendix; and

17         Exhibit C – Discovery Appendix.

18   **7.    Binding Effect of the Joint Pretrial Statement and Order.**

19         [*The Joint Pretrial Statement and Order shall recite, directly above the signature lines of*

20   *each party, the following:*]

21         The foregoing admissions having been made by the parties, and the parties having

22   specified the foregoing issues of fact and law remaining to be litigated, this order shall

23   supplement the pleadings and govern the course of trial of this action, unless modified to prevent

24   manifest injustice.

25

26   Date: January 21, 2015                          By: /s/ Kevin P. Shea

27                                                   Charles R. Bernardini (*pro hac vice*)
                                                     Kevin P. Shea (*pro hac vice*)

28                                                   Jeffrey E. Essner

- 20 -

Erik P. Khoobyarian

Attorneys for Plaintiff Prime Media Group
LLC and Counter-Defendants Prime Media
Group LLC, Breakout S.r.l., Circle Line
Marketing & Communication S.r.l., and
Keechwood Limited

Dated: January 21, 2015          By: /s/ Robert S. Shwarts
                                 Robert S. Shwarts
                                 James E. Thompson
                                 Christine M. Smith
                                 Attorneys for Defendant and
                                 Counterclaimant Acer America Corporation

**ATTESTATION CLAUSE**

I, Kevin P. Shea, am the ECF User whose ID and password are being used to file the

Amended Joint Pretrial Statement and Order.  In compliance with General Order 45, X.B., I

hereby attest that I have on file all holograph signatures for any signatures indicated by a

"conformed" signature (/s/) within this e-filed document.

                                 /s/ Kevin P. Shea
                                 Kevin P. Shea

The Pretrial Statement and Order is ADOPTED as modified by the Court's oral and written rulings.
**SO ORDERED**.

Dated: May 29, 2015          _____
                             THE HONORABLE BETH LABSON FREEMAN
                             United States District Judge

- 21 -